```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
```

ANTHONY ROUNDTREE,

               Petitioner,

   -vs-

SUPERINTENDENT,
RICKY BARTLETT

               Respondent.

**DECISION AND ORDER**
**No. 10-CV-00633(MAT)**

_____

## I. Introduction

*Pro se* Petitioner Anthony Roundtree ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254. In the instant petition, Petitioner challenges his re-adjusted release date following his failure to successfully complete the Willard Drug Treatment Program (hereinafter "the Willard Program"),[1] which he entered after violating parole.

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II. Factual Background and Procedural History

### A. Petitioner's Conviction

---

[1] The Willard Drug Treatment Program is a drug treatment center operated by the New York State Department of Correctional Services in conjunction with the Division of Parole and licensed by the New York State Division of Alcohol and Substance Abuse Services. https://www.parole.state.ny.us/faq.html (last visited 11/16/11).

-1-

In March 2007, Petitioner was convicted, upon a plea of guilty, in New York State, County Court, Niagara County, of Burglary in the Third Degree (New York Penal Law ("Penal Law") § 140.20) and Attempted Burglary in the Third Degree (Penal Law §§ 110.00, 140.20). For those convictions, he was sentenced, as a second felony offender, to an aggregate indeterminate prison term of from two and one-half years to five years. Petitioner did not appeal his judgment of conviction. See Resp't Ex. A (Sentence and Commitment Order).

### B. The Parole Violation

In February 2009, Petitioner was released to parole supervision from the Ogdensburg Correctional Facility. See Resp't Ex. B (Certificate of Release to Parole Supervision and Parole Board Release Decision Notice). Pursuant to his parole conditions of release, which Petitioner signed, he was required to abstain from drug use, submit to drug testing, participate in a substance abuse treatment program, and observe a curfew. See Resp't Ex. B (Conditions of Release); Resp't Ex. C (Special Conditions of Release).

About a year later, Petitioner violated his parole. In early January 2010, Petitioner began repeatedly disregarding his curfew. He also tested positive for cocaine use. On February 23, 2010, Petitioner signed an acknowledgment affirming that he had used cocaine in violation of his conditions of release. See Resp't

Ex. D (Drug and Alcohol Test Record and Acknowledgment of Drug Use).

On March 2, 2010, the Division of Parole ("DOP") issued a parole violation warrant. See Resp't Ex. E (Notice of Arrest Warrant Issued). Petitioner was charged with violating the conditions of his parole as follows: (1) failing on six separate dates to remain within his parole-approved address during nighttime curfew hours; (2) being discharged from his parole-approved address due to his failure to comply with residence rules and regulations; and (3) on two dates, possessing and using cocaine. See Resp't Ex. F (Notice of Violation Report).

### C. Petitioner's Parole Revocation Hearing

Petitioner waived his right to a preliminary parole revocation hearing. On March 25, 2010, he appeared, with counsel, for his final parole revocation hearing before a DOP administrative law judge ("ALJ"). See Resp't Ex. G (Final Parole Revocation Hearing Transcript).

At the outset of the hearing, the ALJ explained that the hearing would be held to determine whether Petitioner violated the conditions of his release, and, if so, whether he should be incarcerated or returned to parole supervision. Petitioner's attorney indicated that Petitioner waived the reading of his rights with respect to the hearing, as they were found in his notice of violation form. Petitioner and his attorney both stated that he

had received the relevant parole documents, and that they had "a sufficient opportunity to go over the charges with each other," and were ready to proceed with the hearing. Id. at 2-4.

The DOP Revocation Specialist then stated that if Petitioner was willing to enter a guilty plea to charge number nine -- that, on March 2, 2010 he had used and possessed cocaine -- DOP was willing to recommend that he enter the Willard Program. Petitioner stated that he wished to plead guilty to charge number nine. The ALJ stated that he wanted to "make sure" Petitioner understood that by pleading guilty, Petitioner "was admitting that the facts are true" and "acknowledging that the Division of Parole would not be required to go forth with any evidence to prove those fact[s] because of [Petitioner]'s plea." Petitioner stated that he understood. Id. at 5.

The ALJ also explained that Petitioner's release to parole supervision would be revoked, and that he would be restored "to the Willard Drug Treatment Program plus aftercare." Petitioner stated that the disposition was "agreeable" to him. Petitioner, however, also stated that he did not understand what the Willard Program was. In response, the ALJ explained that the program was "similar to shock camp" in that it involved both physical activities and "classroom work." Id. at 5-6.

The ALJ also explained that, following the parole hearing, Petitioner would be transported to a correctional facility, where

he would wait until the Willard Program had sufficient new entrants to form a "platoon," at which point he would participate in the Willard Program for "90 days." The ALJ stated that he could not tell Petitioner "exactly when you come out," but that it would likely be within four months. Additionally, the ALJ explained that, while Petitioner was at the Willard Program, he would be "on parole," and after his stay at Willard, he would enter aftercare, "usually outpatient" treatment. Id. at 6-7.

After hearing the ALJ's description of the program, Petitioner stated that the disposition was agreeable, and that he wished to plead guilty to violating the conditions of his release. The DOP indicated that it would withdraw the remaining eight charges. At the close of the hearing, the ALJ served Petitioner and his counsel with a written decision indicating that his release on parole was revoked, and that Petitioner was restored to the Willard Program, plus aftercare. Petitioner also received a notice of his right to appeal the decision to the State Parole Board. Id. at 7; Resp't Ex. H (Parole Revocation Decision Notice); Resp't Ex. I (Parole Revocation Certificate of Disposition).

D.  **Petitioner's Stay at Willard**

Upon his admission to the Willard Program in April 2010, Petitioner signed a consent form allowing the Willard Program to provide DOP with "any and all information necessary for appropriate parole supervision." The form was in effect until Petitioner

"successfully completed treatment" and Petitioner was discharged from both his sentence and parole supervision. See Resp't Ex. J (Release of Confidential Information Consent Form). Petitioner also signed a supplement to the conditions of his release to parole supervision requiring him to "[e]nter and complete the Willard DTC Program and any aftercare, obey all rules, regulations, orders, and recommendations of any program." See Resp't Ex. K (Supplement to Conditions of Release).

While at the Willard Program, Petitioner received multiple unsatisfactory evaluations, and DOCs issued a misbehavior report. As a result, he appeared before the Willard Evaluation Review Committee ("ERC"). On June 24, 2010, the Willard ERC issued a justification memo, in which they found that Petitioner had failed seven of eight weekly evaluations, received six "negative case memo[]s," had one "learning experience," and a "DOCS misbehavior report," following which Petitioner was found guilty of interfering with a facility employee. See Resp't Ex. L (Willard Justification Memo). The Willard ERC further stated that Petitioner had been offered and accepted a "seven-week" recycle through the Willard Program, and that he had signed a special conditions form indicating that he understood the agreement. Id. The memo further explained that, because Petitioner would stay at Willard for an additional seven weeks, his Willard release date would change from July 20, 2010 to September 7, 2010. Id.

Following the Willard ERC's decision, Petitioner signed a new special conditions of release to parole supervision form, in which he agreed to "re-enter, participate in, and successfully complete" the Willard Program, and "comply with all the requirements of the program. See Resp't Ex. M (June 24, 2010 Special Conditions of Release). As part of those conditions, Petitioner also indicated that he understood "that failure to complete the program this time will be a violation of parole." Id. Petitioner also agreed that his new Willard graduation date would be September 7, 2010. Id.

**E.   The State Petition for a Writ of Habeas Corpus**

While still at the Willard Program, following his agreement to the additional seven weeks at the program, Petitioner filed, in the Supreme Court, Seneca County a *pro se* petition for a writ of habeas corpus, dated July 6, 2010. See Resp't Ex. N. In that petition, he argued that the Willard ERC violated his due process rights and N.Y. Crim. Proc. Law ("C.P.L.") § 410.91 by adjusting his release date from the Willard Program past the original 90-day sentence. According to Petitioner, the Willard ERC had no authority to increase his sentence beyond the 90 days ordered by the ALJ at his final revocation hearing. He further argued that, by recycling him through the Willard Program for an additional period of time, the Willard ERC had improperly modified his sentence.

In a decision and judgment dated July 12, 2010, the Supreme Court, Seneca County denied Petitioner's claim on the merits and

dismissed the petition.  See Resp't Ex. O (Seneca Supreme Court Decision and Judgment).  In denying Petitioner's claim, the court found that "Petitioner could have rejected the offer of an extended placement, and then challenged his purported failure of the Willard Program within the context of his final parole revocation determination."  Instead, the court explained that Petitioner "chose to accept the offer to try again to successfully complete the Willard program."  Id.  Petitioner did not appeal the court's denial of his state habeas petition.

**F.   The Federal Petition for a Writ of Habeas Corpus**

On August 3, 2010, Petitioner filed the instant habeas corpus petition, in which he seeks relief on the basis that his sentence was improperly modified and extended by the Willard ERC, in violation of C.P.L. § 410.91(1).  According to Petitioner, because the judgment of DOP's ALJ instructed that he be released after 90 days of drug treatment at the Willard facility, and he arrived at that facility on April 13, 2010, he should have been released on July 20, 2010.  Petitioner claims that the ERC's June 24, 2010 decision adding an additional seven weeks of drug treatment violated his constitutional rights.  See Pet. ¶ 12A-D (Dkt. No. 1).[2]

---

[2] On October 19, 2010, Petitioner filed a Declaration in further support of his habeas claims.  In that Declaration, he argues that, under New York's Patient Rights Act, the Committee's decision to rescind his discharge date was limited, and Petitioner was entitled to written notice of the reasons his discharge date was rescinded and a notice of his rights to appeal.  Because those procedures

**III. DISCUSSION**

An application for a writ of habeas corpus may not be granted until the prisoner has exhausted all remedies available in state court. 28 U.S.C.A. § 2254(b). The exhaustion requirement is not satisfied unless the federal claim has been "fairly presented" to the state courts. 28 U.S.C.A. § 2254(b)(c).

Habeas petitions challenging parole revocations are subject to the doctrine of exhaustion. Scales v. New York State Div. of Parole, 396 F. Supp. 2d 423, 428 (S.D.N.Y. 2005) (citations omitted). "To exhaust a denial of parole under New York law, the inmate must first file an administrative appeal with the Division of Parole's Appeals Unit. If that appeal is denied, he must seek relief in state court pursuant to Article 78."[3] Id. (quotations omitted); see also N.Y.Comp. Codes R. & Regs tit. 9, § 8006.1. If the Article 78 petition is denied, the petitioner must then appeal that denial to the highest state court capable of reviewing the claim. Scales, 396 F. Supp. 2d at 428 (citing Cotto v. Herbert, 331 F.3d 217, 237 (2d Cir. 2003)). In this case, Petitioner did

---

were not followed, and he had a protected liberty interest in his release on his original drug treatment graduation date, Petitioner argues his due process rights were violated. He also argues that, pursuant to his plea agreement, he had agreed to a sentence of 90-day drug treatment, and that his later release from that treatment, on August 10, 2010, violated that agreement. See Pet's Declaration (Dkt. No. 8). Petitioner also filed a Reply in Opposition to Respondent's Answer to the Petition for a Writ of Habeas Corpus (Dkt. No. 11).

[3] N.Y. C.P.L.R. art. 78 establishes the procedure for judicial review of the actions and inactions of state and local government agencies and officials.

not file an administrative appeal from DOP's March 25, 2010 decision to revoke his release on parole and restore him to the Willard Program. See Resp't Exs. G and H.  Moreover, he failed to file an Article 78 petition in state court challenging the final parole revocation decision.

Notably, on June 24, 2010, when the Willard ERC decided -- with Petitioner's agreement -- to "recycle" him through the Willard Program for an additional seven weeks, Petitioner was still able to file an Article 78 petition in state court challenging his parole revocation.  See N.Y. C.P.L.R. ("C.P.L.R.") § 217 (limitations period for Article 78 proceeding is four months).  Because Petitioner failed to administratively appeal his final parole decision to the DOP Appeals Unit and further failed to file an Article 78 petition challenging the remedy fashioned at the final parole revocation hearing, his current claims are unexhausted.[4]

Nonetheless, if a petitioner's unexhausted claims can no longer be raised in state courts due to a procedural default, the federal court shall deem the claims exhausted.  See Bossett v.

---

[4] Although Petitioner did raise some of his current arguments in his state petition for a writ of habeas corpus (see Resp't Ex. N), that filing did not exhaust his current claims.  Challenges to decisions by DOP are not properly exhausted by raising claims in state habeas petitions; instead, parole-related claims must be exhausted by raising them in an Article 78 petition. See Robles v. Williams, 02 Civ. 6102 (PAC) (DCF), 2007 U.S. Dist. LEXIS 62052, *6-7 (citing cases); see also People ex rel. Quartararo v. Demskie, 238 A.D.2d 792, 793 (3d Dep't 1997) ("[T]he remedy of habeas corpus is available in New York only if the [petitioner] would be entitled to immediate release were he or she to prevail. Inasmuch as parole decisions are discretionary and prisoners have no right to such release prior to the expiration of their sentences, denial of parole may not be challenged by way of habeas corpus.") (internal citations omitted).

Walker, 41 F.3d 825, 828 (2d Cir. 1994)).  When a petitioner fails to exhaust his state remedies, and the state court finds the claims procedurally barred, federal courts must also deem the claims procedurally defaulted. 28 U.S.C.A. § 2254(b)(1); Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001).  Petitioner can no longer bring an administrative appeal because he failed to a file a notice of appeal within thirty days after his final parole revocation hearing, nor can he bring an Article 78 petition appealing the decision because the four month statute of limitations has expired. See N.Y. Comp. Codes R. & Regs tit. 9, § 8006.1(b);  C.P.L.R. § 217.  Because state remedies are no longer available to Petitioner, his claims are deemed exhausted and procedurally defaulted. See Bossett, 41 F.3d at 828.

However, a procedural default does not automatically bar a state prisoner from relief in federal habeas court. Felder v. Goord, 564 F. Supp.2d 201, 212, 213 (S.D.N.Y 2008).  Relief may be granted despite the petitioner's failure to exhaust state remedies. Id. at 213.  The same procedural default that exhausts Petitioner's claims also may bar consideration of the merits of the claim. See Wainwright v. Sykes, 433 U.S. 72, 87 (1977).  This can be overcome if petitioner can show "cause" for the default and actual prejudice for his failure to file a timely notice of administrative appeal or an Article 78 motion in accordance with state procedural rules, or that failure to consider the claims will result in a "fundamental

miscarriage of justice." Siao-Pao v. Connolly, 564 F. Supp. 2d 232 (S.D.N.Y. 2008); see also 28 U.S.C. § 2254(b)(1).

Neither exception is demonstrated in this case. Petitioner has not alleged cause and prejudice to excuse his failure to appeal the parole revocation decision and/or commence an Article 78 proceeding within four months after the parole determination became final. Moreover, introduction of new evidence of innocence is essential to establish a "fundamental miscarriage of justice," that would allow a federal court to reach the merits of a barred habeas claim. Schlup v. Delo, 513 U.S. 298, 316 (1995). Nothing introduced in Petitioner's habeas petition (or his supporting papers) suggests that he is actually innocent or that if the court fails to consider his unexhausted claims, a "fundamental miscarriage of justice" will occur. See Id. at 327.

Accordingly, Petitioner's current claims are unexhausted but deemed exhausted and procedurally defaulted from habeas review and are therefore dismissed on that basis.

## V.  Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of

Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   November 18, 2011
         Rochester, New York